

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| deCODE genetics, Inc. [1] | ) Case No. 09-14063 (PJW) |
| | ) |
| Debtor. | ) |
| | ) |
| | ) Re: Docket Nos. 28, 88 and 140 |

### ORDER (1) APPROVING ASSET PURCHASE AGREEMENT BETWEEN DEBTOR AND PURCHASER, (2) APPROVING SALE OF SUBSTANTIALLY ALL ASSETS AND ASSUMPTION OF CERTAIN LIABILITIES FREE AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES AND OTHER INTERESTS, (3) APPROVING ASSUMPTION, ASSIGNMENT AND SALE OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES, AND (4) DETERMINING AMOUNTS NECESSARY TO CURE SUCH EXECUTORY CONTRACTS AND UNEXPIRED LEASES

deCODE genetics, Inc. (the "Debtor"), having filed its *Motion Of Debtor And Debtor-In-Possession For Entry Of Orders (I) Approving Bidding Procedures For The Sale Of Certain Assets Of The Debtor Free And Clear Of All Liens, Claims And Encumbrances Pursuant To Section 363 Of The Bankruptcy Code, (II) Approving Certain Bidding Protections, (III) Approving The Form And Manner Of Notice Of The Sale And Assumption And Assignment Of Executory Contracts And Unexpired Leases, (IV) Scheduling An Auction And Sale Hearing And (V) Approving Such Sale* (the "Sale Motion"), seeking, among other things, entry of an order (the "Sale Order"): (a) approving the sale of certain of the Debtor's assets pursuant to that certain Asset Purchase Agreement, dated as of November 16, 2009 (the "Asset Purchase Agreement"),[2] by and between the Debtor and Saga Investments LLC (the "Purchaser"); (b) providing for the sale by the Debtor to Purchaser of the Purchased Assets[3] and the assumption, assignment and

---

[1] The debtor in this case, along with the last four digits of the federal tax identification number for the debtor, is deCODE genetics, Inc. (6704).

[2] A true and correct copy of the Asset Purchase Agreement is attached hereto as Exhibit 1.

[3] All capitalized terms not otherwise defined herein have the meanings ascribed to them in the Asset Purchase Agreement.

sale to Purchaser of the Potentially Assigned Seller Contracts and Assumed Liabilities; and (c) authorizing the consummation of the sale of the Purchased Assets and related transactions contemplated therein (the "Sale"); and this Court having entered an order on December 11, 2009 (the "Bidding Procedures Order") approving, among other things, the bidding procedures with respect to, and notice of, the Sale; and an auction having been held on December 21, 2009 in accordance with the Bidding Procedures Order; and the Debtor, after consultation with the Official Committee of Unsecured Creditors (the "Committee"), having determined that the Asset Purchase Agreement represents the highest or otherwise best bid for the Purchased Assets, Potentially Assigned Seller Contracts, and Assumed Liabilities; and a hearing having been held on December 22, 2009 (the "Sale Hearing") to consider approval of the sale of the Purchased Assets to Purchaser (as well as the assumption by the Debtor and assignment and sale to Purchaser of the Potentially Assigned Seller Contracts) pursuant to the terms and conditions of the Asset Purchase Agreement; and adequate and sufficient notice of the Sale Motion having been given to all parties in interest in this case; and all such parties having been afforded due process and an opportunity to be heard with respect to the Sale Motion and all relief requested therein; and the Court having reviewed and considered: (a) the Sale Motion; (b) the objections to the Sale Motion, if any; and (c) the arguments of counsel made, and the evidence proffered or adduced, at the Sale Hearing; and the Sale Hearing having been held, and after due deliberation and sufficient cause appearing;

## IT HEREBY IS FOUND AND DETERMINED THAT:[4]

A.      The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014.

---

[4] Findings of fact shall be construed as conclusions of law and conclusions of law shall be construed as findings of fact when appropriate. See Fed. R. Bankr. P. 7052.

B.     This Court has jurisdiction over the Sale Motion under 28 U.S.C. §§ 157 and 1334, and this matter is a core proceeding under 28 U.S.C. § 157(b)(2)(A) and (N). Venue of this case and the Sale Motion in this district is proper under 28 U.S.C. §§ 1408 and 1409.

C.     The statutory bases for the relief sought in the Sale Motion are sections 105(a), 363, 365 and 503 of the Bankruptcy Code, and Rules 2002, 6004, 9007, and 9014 of the Federal Rules of Bankruptcy Procedures (the "Bankruptcy Rules").

D.     As evidenced by the affidavits of service on file with the Court, (i) due, proper, timely, adequate, and sufficient notice and a reasonable opportunity to object or be heard with respect to the Sale Motion and the relief requested therein has been provided in accordance with Bankruptcy Code, the Bankruptcy Rules, the Bidding Procedures Order and the Asset Purchase Agreement to all interested persons and entities, including, without limitation, (a) all entities that claim any interest in or lien on the Purchased Assets; (b) all parties to Potentially Assigned Seller Contracts that may be assumed and assigned pursuant to this Sale Order; (c) all governmental taxing authorities that have, or as a result of the sale of the Purchased Assets may have, claims, contingent or otherwise, against the Debtor; (d) all parties that filed requests for notices under Bankruptcy Rule 9010(b) or were entitled to notice under Bankruptcy Rule 2002; (e) all creditors (whether liquidated, contingent or unmatured) of the Debtor; (f) all interested governmental entities; (g) parties expressing an interest in the Purchased Assets; (h) all foreign receivers; (i) the Office of the United States Trustee and (j) once appointed, the Committee; (ii) such notice was good, sufficient, and appropriate under the circumstances; and (iii) no other or further notice of the Sale Motion is or shall be required.

E.     The bidding and related procedures established by the Bidding Procedures Order were fair in substance and procedure and have been complied with in all material respects by the Debtor and Purchaser. The Debtor solicited offers for and scheduled an auction of the Purchased Assets in accordance with the Bidding Procedures Order. However, the Debtor did not receive any additional bids for the Purchased Assets and, accordingly, the Auction was cancelled. The Debtor, in consultation with the Committee, has determined that the Asset Purchase Agreement

represents the highest or otherwise best bid for the Purchased Assets, Potentially Assigned Seller Contracts, and Assumed Liabilities.

F.  Upon entry of this Sale Order, the Debtor shall have full authority to consummate the Sale contemplated by the Asset Purchase Agreement.

G.  Approval of the Asset Purchase Agreement and consummation of the Sale will provide the highest or otherwise best value for the Purchased Assets and is in the best interests of the Debtor, its estate, creditors, and other parties in interest.  The Debtor has demonstrated good, sufficient, and sound business purposes and justifications for the sale of the Purchased Assets outside the ordinary course of business to Purchaser pursuant to section 363(b) of the Bankruptcy Code, and entry into the Asset Purchase Agreement and consummation of the Sale constitute the exercise of the Debtor's sound business judgment and fiduciary duties.

H.  The Asset Purchase Agreement was negotiated, proposed, and entered into by the Debtor and Purchaser without collusion, in good faith within the meaning of section 363(m) of the Bankruptcy Code, and from arm's length bargaining positions.  The Debtor and Purchaser have not engaged in any conduct that would cause or permit the Asset Purchase Agreement or the Sale to be avoided under section 363(n) of the Bankruptcy Code.

I.  Purchaser is a good faith purchaser under section 363(m) of the Bankruptcy Code and, as such, is entitled to all of the protections afforded thereby and otherwise has proceeded in good faith in all respects in connection with this proceeding in that: (i) Purchaser recognized that the Debtor was free to deal with any other party interested in acquiring the Purchased Assets; (ii) Purchaser agreed to provisions in the Asset Purchase Agreement that would enable the Debtor to accept a higher and better offer for the Purchased Assets; (iii) other than with respect to the conditions contained in the Asset Purchase Agreement  requiring the commencement of this chapter 11 case, Purchaser in no way induced or caused the chapter 11 filing of the Debtor; (iv) Purchaser made the highest and best bid for the Purchased Assets; (v) all payments to be made to Purchaser and other agreements or arrangements entered into by Purchaser in connection with the Sale have been disclosed; (vi) Purchaser adequately disclosed all connections between

4

Purchaser and the Debtor; (vii) the negotiation and execution of the Asset Purchase Agreement and any other agreements or instruments related thereto was in good faith and an arm's-length transaction between Purchaser and the Debtor; and (viii) the Court's findings with respect to the Purchaser's status as a good faith purchaser pursuant to section 363(m) at the Bid Procedures Hearing are fully incorporated herein. Purchaser is acting in good faith within the meaning of section 363(m) in consummating the Sale.

J.      The consideration to be provided by Purchaser pursuant to the Asset Purchase Agreement: (i) is fair and reasonable; (ii) is the highest or otherwise best offer for the Purchased Assets; (iii) will provide a greater recovery for the Debtor's creditors than would be provided by any other practically available alternative; and (iv) constitutes reasonably equivalent value and fair consideration under the Bankruptcy Code, the Uniform Fraudulent Conveyance Act (7A part II, U.L.A. 2 (1999)) or the Uniform Fraudulent Transfer Act (7A part II, U.L.A. 66 (1999)), and the laws of the United States, any state, territory, possession, or the District of Columbia.

K.      The Asset Purchase Agreement was not entered into for the purpose of hindering, delaying or defrauding creditors under the Bankruptcy Code or under the laws of the United States, any state, territory, possession or the District of Columbia.

L.      Purchaser is not an "insider" of the Debtor, as that term is defined in section 101(31) of the Bankruptcy Code.

M.      The transfer of the Purchased Assets to Purchaser pursuant to the Asset Purchase Agreement will be a legal, valid, and effective transfer of the Purchased Assets and, except as provided in the Asset Purchase Agreement, will vest Purchaser with all right, title, and interest of the Debtor and its estate to the Purchased Assets free and clear of all Liens, Claims or Interests (other than Permitted Liens); provided, however, that all such Liens, Claims or Interests shall attach to the proceeds of the sale, in order of priority.

N.      A sale of the Purchased Assets other than one free and clear of Liens, Claims or Interests would be of substantially less benefit to and would adversely affect the Debtor's estate.

O.     Subject to the provisions of this Sale Order and except as may be provided in the Asset Purchase Agreement, the Debtor may sell the Purchased Assets free and clear of all Liens, Claims, or Interests of any kind or nature whatsoever because, in each case, one or more of the standards set forth in section 363(f)(1) through (5) of the Bankruptcy Code have been satisfied.

P.     All parties with Liens, Claims or Interests against the Purchased Assets identified to be sold under the Asset Purchase Agreement, if any, who did not object to the Sale Motion and the relief requested therein, or who withdrew their objections to the Sale Motion, are deemed to have consented pursuant to section 363(f)(2) of the Bankruptcy Code; and all parties with Liens, Claims or Interests against the Purchased Assets who objected to the Sale Motion, but who did not withdraw any such objection, can be compelled to accept a monetary satisfaction of their Liens, Claims or Interests within the meaning of section 363(f)(5) of the Bankruptcy Code, and in each case, are enjoined from taking any action against Purchaser, its affiliates or any agent of the foregoing to recover any claim which such person or entity has solely against the Debtor, or any of its respective affiliates.

Q.     The (i) transfer of the Purchased Assets to Purchaser and (ii) assumption by the Debtor and assignment and sale to Purchaser of the Potentially Assigned Seller Contracts will not subject Purchaser to any liability whatsoever (including any successor liability) with respect to the operation of the Business prior to the Closing or by reason of such transfer, except that Purchaser shall remain liable for the Assumed Liabilities and any other liabilities that Purchaser has specifically agreed to assume pursuant to the Asset Purchase Agreement. For the avoidance of doubt, by virtue of the Asset Purchase Agreement or otherwise, Purchaser shall not acquire any liabilities of the Debtor, other than the Assumed Liabilities as set forth in the Asset Purchase Agreement.

R.     Upon the consummation of the Sale of the Purchased Assets to Purchaser, (a) Purchaser shall not be, as a result of the purchase of the Purchased Assets or otherwise, considered to have continued the business operations associated with the Purchased Assets without interruption or substantial change, and (b) substantial continuity in the operation of the

Debtor's business before and after the purchase of the Purchased Assets shall not be considered to exist.

S.     Purchaser shall not be deemed to be a successor to the Debtor, or otherwise liable, for any liability of Seller under ERISA or otherwise.

T.     Without limiting the generality of the foregoing, other than the Assumed Liabilities, Purchaser would not have entered into the Asset Purchase Agreement and would not consummate the Sale, thus adversely affecting the Debtor, its estate and its creditors, if the sale of the Purchased Assets to Purchaser and the assignment of the Potentially Assigned Seller Contracts to Purchaser were not free and clear of all Liens, Claims or Interests of any kind or nature whatsoever, other than the Assumed Liabilities, or if Purchaser would or in the future could, be liable for any Liens, Claims or Interests, other than the Assumed Liabilities, including but not limited to any liability arising out of or related to any of Excluded Liabilities.

U.     The Asset Purchase Agreement is a valid and binding contract between the Debtor and Purchaser, which is and shall be enforceable according to its terms.

V.     Good and sufficient notice of the Sale Motion, of the possible assumption and assignment of the Potentially Assigned Seller Contracts, and of the opportunity to object to such assumption and assignment has been provided to each non-debtor party to a Potentially Assigned Seller Contract, together with a statement therein from the Debtor with respect to the amount, if any, to be paid to such non-debtor party to cure any defaults under, and to otherwise comply with the requirements of section 365(b) of the Bankruptcy Code with respect to the Potentially Assigned Seller Contract to which such non-debtor is party (the "Cure Costs"). As to each Potentially Assigned Seller Contract, payment of the Cure Costs, as set forth on Exhibit 2 hereto, is sufficient for the Debtor to comply fully with the requirements of section 365(b) of the Bankruptcy Code. In addition, Purchaser has provided adequate assurance of its ability to perform its obligations under each of the Potentially Assigned Seller Contracts within the meaning of section 365(c) of the Bankruptcy Code.

W. The Potentially Assigned Seller Contracts are assignable notwithstanding any provisions contained therein to the contrary. Failure to object to the assumption and assignment of a Potentially Assigned Seller Contract is deemed consent to the assumption and assignment. The Debtor will provide for the cures and/or other payments or actions required to assume and assign the Potentially Assigned Seller Contracts to the Purchaser as set forth in the Asset Purchase Agreement.

X. The Potentially Assigned Seller Contracts are valid and binding, in full force and effect, and enforceable in accordance with their terms.

Y. The assumption and assignment of the Potentially Assigned Seller Contracts as set forth in the Asset Purchase Agreement is integral to the Asset Purchase Agreement and is in the best interests of the Debtor, its creditors and estate and other parties-in-interest, and represents the exercise of sound and prudent business judgment by the Debtor.

Z. Therefore, each of the Potentially Assigned Seller Contracts may be assumed by the Debtor and assigned and sold to Purchaser.

AA. The legal and factual bases set forth in the Sale Motion and at the Sale Hearing establish just cause for the relief granted herein.

BB. Upon entry of this Sale Order, the Debtor shall have full power and authority to consummate the Sale contemplated by the Asset Purchase Agreement. The Asset Purchase Agreement and the Sale have been duly and validly authorized by all necessary action of the Debtor and no shareholder vote, board resolution or other corporate action is required of the Debtor for the Debtor to consummate such Sale.

CC. Cause has been shown as to why this Sale Order should not be subject to the stay provided by Bankruptcy Rules 6004 and 6006.

DD. The entry of this Sale Order is in the best interests of the Debtor, its creditors and estate, and other parties in interest.

EE. There is other good and sufficient cause to grant the relief requested in the Sale Motion and approve the Asset Purchase Agreement and the Sale.

**NOW, THEREFORE, IT IS HEREBY ORDERED THAT:**

1.      The Sale Motion is GRANTED and approved in all respects.

2.      All objections and responses to the Sale Motion are hereby resolved in accordance with the terms of this Sale Order and as set forth in the record at the Sale Hearing.  Any objections to the entry of this Sale Order or the relief granted herein and requested in the Sale Motion that have not been withdrawn, waived or settled, and all reservations of rights included therein, are hereby DENIED and OVERRULED.

3.      Purchaser's offer for the Purchased Assets, as embodied in the Asset Purchase Agreement, is the highest and best offer for the Purchased Assets and is hereby approved.

4.      The Asset Purchase Agreement, including all of its terms and conditions, all additional instruments and documents related to or contemplated thereby (collectively, the "Sale Documents"), and the Sale are hereby approved in all respects.  For the avoidance of doubt, Purchaser is authorized to credit the outstanding amount of the Bridge Loan and the DIP Loan against the Purchase Price of the Purchased Assets on the terms set forth in the Asset Purchase Agreement.

5.      Pursuant to sections 363 and 365 of the Bankruptcy Code, the Debtor is authorized to execute, deliver, and perform under, consummate, and implement the Asset Purchase Agreement together with the Sale Documents and all additional instruments and documents that are requested by Purchaser and may be reasonably necessary or desirable to implement the Asset Purchase Agreement, and to take any and all actions as it deems necessary, appropriate, or advisable for the purpose of assigning, transferring, granting, conveying, and conferring to Purchaser or reducing to possession, the Purchased Assets, or as may be necessary or appropriate to the performance of the obligations as contemplated by the Asset Purchase Agreement, including, without limitation, any and all actions reasonably requested by Purchaser which are consistent with the Asset Purchase Agreement.

6.      Pursuant to sections 105(a), 363(f) and 365(b) of the Bankruptcy Code, upon the Closing:  (i) the transfer of the Purchased Assets to Purchaser pursuant to the Asset Purchase

Agreement shall constitute a legal, valid, and effective transfer of the Purchased Assets and shall vest Purchaser with all right, title, and interest in and to the Purchased Assets; and (ii) the Purchased Assets shall be transferred to Purchaser free and clear of all Liens, Claims or Interests (other than Permitted Liens), and other interests of any kind and every kind whatsoever (including Liens, Claims or Interests of any Governmental Entity and any rights of licensees under section 365(n) of the Bankruptcy Code), in each case whether known or unknown, against such assets, in accordance with section 363(f) of the Bankruptcy Code, with any such Liens, Claims or Interests to attach to the proceeds of the Sale, in the order of their priority, with the same validity, force, and effect which they had against the Purchased Assets prior to the entry of this Sale Order, subject to any rights, claims, and defenses the Debtor and all interested parties may possess with respect thereto.

7.      This Sale Order is and shall be effective as a determination that all Liens, Claims or Interests shall be and are, without further action by any person or entity, released with respect to the Purchased Assets as of the Closing Date, except as may otherwise be set forth in the Asset Purchase Agreement.

8.      Purchaser shall not be deemed or considered a successor to the Debtor or the Debtor's estate by reason of any theory of law or equity, Purchaser has not purchased any of the Excluded Assets, and, except for the Assumed Liabilities as defined and provided for in the Asset Purchase Agreement, Purchaser shall not acquire or assume, nor shall it be in any way responsible for any liability or obligation of the Debtor or the Debtor's estate, as successor in interest or otherwise, including, without limitation any liability for any remedies sought by the National Labor Relations Board or by any Person under the WARN Act or state analogue or ERISA or any liability with respect to COBRA coverage for employees or consultants of the Debtor terminated prior to or as part of the consummation of the transaction set forth in the Asset Purchase Agreement with regard to any conduct by the Debtor occurring prior to the Closing Date or any other liability to, arising out of, or related to the Excluded Assets, in each case whether arising prior to or after the Closing Date.

9.     The transactions contemplated under the Asset Purchase Agreement do not amount to a consolidation, merger, or de facto merger of Purchaser and the Debtor and/or the Debtor's estate, there is not substantial continuity between Purchaser and the Debtor, there is no continuity of enterprise between the Debtor and Purchaser, Purchaser is not a mere continuation of the Debtor or its estate, and Purchaser does not constitute a successor to the Debtor or its estate.

10.     Except for the Assumed Liabilities and Permitted Liens as defined and provided for in the Asset Purchase Agreement, pursuant to sections 105(a), 363, and 365 of the Bankruptcy Code, all Persons and entities, including, without limitation, the Debtor, the Debtor's affiliates, all debt security holders, equity security holders, the Debtor's employees or former employees, governmental, tax, and regulatory authorities, lenders, parties to or beneficiaries under any benefit plan, trade and other creditors asserting or holding any Liens, Claims or Interests, in or with respect to the Debtor or the Purchased Assets (whether legal or equitable, secured or unsecured, matured or unmatured, contingent or non-contingent, senior or subordinated), arising under or out of, in connection with, or in any way relating to the Debtor, the Purchased Assets, the operation of the Debtor's business prior to the Closing Date under the Asset Purchase Agreement or the transfer of the Purchased Assets to Purchaser, shall be forever barred, estopped, and permanently enjoined from asserting, prosecuting or otherwise pursuing such Liens, Claims or Interests against Purchaser or any affiliate, successor or assign thereof and each of their respective current and former members, officers, directors, managed funds, investment advisors, attorneys, employees, partners, affiliates and representatives (each of the foregoing in its individual capacity), or the Purchased Assets.

11.     If any Person or entity that has filed any financing statement, mortgage, mechanic's lien, *lis pendens* or other document or instrument evidencing liens with respect to any of the Purchased Assets shall have failed to deliver to the Debtor and Purchaser prior to the Closing of the Sale, in proper form for filing and executed by the appropriate entity or entities, termination statements, instruments of satisfaction and releases of all Liens, Claims or Interests

which such person or entity has with respect to the Purchased Assets, then (a) the Debtor is authorized to execute and file such statements, instruments, releases and other documents on behalf of such person or entity and (b) Purchaser is authorized to file, register, or otherwise record a certified copy of this Sale Order, which, once filed, registered, or otherwise recorded, shall constitute conclusive evidence of the release of all liens, claims, encumbrances, and interests in the Purchased Assets as of the Closing of the Sale.

12.     This Sale Order is and shall be effective as a determination that, upon Closing, Liens, Claims or Interests (other than Permitted Liens) existing as to the Purchased Assets conveyed to Purchaser have been and hereby are adjudged and declared to be unconditionally released, discharged and terminated.

13.     The provisions of this Sale Order authorizing the sale of the Purchased Assets free and clear of Liens, Claims or Interests (other than Permitted Liens), shall be self-executing, and neither the Debtor nor Purchaser shall be required to execute or file releases, termination statements, assignments, consents, or other instruments to effectuate, consummate, and implement the provisions of this Sale Order.  However, the Debtor and Purchaser, and each of their respective officers, employees, and agents, are authorized and empowered to take all actions and execute and deliver any and all documents and instruments that either the Debtor or Purchaser deem necessary or appropriate to implement and effectuate the terms of the Asset Purchase Agreement and this Sale Order.

14.     Each and every federal, state, local governmental agency or department, and other Governmental Entity is hereby directed to accept any and all documents and instruments necessary and appropriate to consummate the transactions contemplated by the Asset Purchase Agreement and this Sale Order.

15.     After the date of Closing of the Sale, no Person or entity, including, without limitation, any federal, state or local taxing authority, may (a) attach or perfect liens or a security interest against any of the Purchased Assets on account of, or (b) collect or attempt to collect from Purchaser or any of its affiliates, any tax (or other amount alleged to be owing by the

Debtor) (i) for any period commencing before and concluding prior to the Closing Date or (ii) assessed prior to and payable after the Closing Date.

16.     Pursuant to sections 105(a) and 363(b) of the Bankruptcy Code, all "persons" (as that term is defined in section 101(41) of the Bankruptcy Code) are hereby enjoined from taking any action against Purchaser or Purchaser's affiliates (as they existed immediately prior to the Closing) to recover any claim which such "person" has solely against the Debtor or the Debtor's affiliates (as they exist immediately following the Closing).

17.     Upon written instruction from Purchaser prior to the Contract Determination Date as set forth herein and in the Asset Purchase Agreement, pursuant to section 365 of the Bankruptcy Code, the Debtor is authorized to assume the Potentially Assigned Seller Contracts, cure the same (in the Cure Costs set forth on Exhibit 2 hereto (the "Cure Schedule"), or by further order of the Court, with such Cure Costs to be paid by the Debtor) as set forth in the Asset Purchase Agreement, and assign and sell the Potentially Assigned Seller Contracts to Purchaser.

18.     Purchaser shall have a period of not less than the earlier of 90 days from the Closing Date to direct the Debtor to assume and assign a Potentially Assigned Seller Contract (the Potentially Assigned Seller Contracts assumed and assigned at such direction, the "Assigned Seller Contracts"). Potentially Assigned Seller Contracts not designated in writing by Purchaser as Assigned Seller Contracts on or before the Contract Determination Date (as defined in the Asset Purchase Agreement) shall be Excluded Assets (as defined in the Asset Purchase Agreement).

19.     Upon assumption and assignment, the Debtor shall pay the counterparties to the Assigned Seller Contracts the Cure Costs in the amounts set forth in the Cure Schedule. Except as set forth herein, the Cure Costs set forth in the Cure Schedule shall be deemed the entire cure obligation of the Debtor due and owing under section 365 of the Bankruptcy Code. Any non-debtor party to an Assigned Seller Contract is barred, enjoined and prohibited from asserting any claim (as defined in section 101(5) of the Bankruptcy Code) against the Debtor or its property or estate other than the Cure Cost with respect to such Assigned Seller Contract or from offsetting,

seeking to offset, recoup, deduct or set-off any claim such party may have against the Debtor from any amounts that may be or may become due in the future to Purchaser under such Assigned Seller Contract.

20.     The failure of the Debtor or Purchaser to enforce at any time one or more terms or conditions of any Potentially Assigned Seller Contract or Assigned Seller Contract shall not be a waiver of such terms or conditions, or of the Debtor's or Purchaser's right to enforce every term and condition of the Potentially Assigned Seller Contracts or the Assigned Seller Contracts.

21.     Purchaser has demonstrated adequate assurance of future performance with respect to all Potentially Assigned Seller Contracts. The proposed assumption and assignment of the Potentially Assigned Seller Contracts satisfies the requirements of the Bankruptcy Code including, *inter alia*, sections 365(b)(1) and (3) and 365(f) of the Bankruptcy Code to the extent applicable.

22.     The Assigned Seller Contracts, consistent with the provisions contained herein, shall be transferred to, and remain in full force and effect for the benefit of, Purchaser in accordance with their respective terms, notwithstanding any provision in any such Assigned Seller Contract (including those of the type described in section 365(b)(2) of the Bankruptcy Code) that prohibits, restricts, or conditions such assignment or transfer and, pursuant to section 365(k) of the Bankruptcy Code, the Debtor shall be relieved from any further liability with respect to the Assigned Seller Contracts (except as set forth in the Asset Purchase Agreement) after such assignment and sale to Purchaser.

23.     Any provision in any Potentially Assigned Seller Contract that purports to declare a breach, default, or payment right as a result of an assignment or a change of control in respect of the Debtor are unenforceable and is hereby nullified with respect to the sale and assignments authorized by this Sale Order, and all Potentially Assigned Seller Contracts shall remain in full force and effect, subject only to payment of the appropriate Cure Costs, if any. No sections or provisions of any Potentially Assigned Seller Contract that purport to provide for additional payments, penalties, charges, or other financial accommodations in favor of the non-debtor third

party to the Potentially Assigned Seller Contracts or restrict use of the premises which are demised by a Potentially Assigned Seller Contract to a specific named tenant or business shall have any force and effect with respect to the sale and assignments authorized by this Sale Order, and such provisions constitute unenforceable anti-assignment provisions under section 365(f) of the Bankruptcy Code and/or are otherwise unenforceable under section 365(e) of the Bankruptcy Code.

24. All defaults or other obligations of the Debtor under the Assigned Seller Contracts arising or accruing prior to the Closing (without giving effect to any acceleration clauses or any default provisions of the kind specified in section 365(b)(2) of the Bankruptcy Code) shall be deemed cured, upon payment of the Cure Costs by the Debtor, and Purchaser shall have no liability or obligation arising or accruing under the Assigned Seller Contracts on or prior to the Closing, except as otherwise expressly provided in the Asset Purchase Agreement. The non-debtor parties to the Assigned Seller Contracts are barred from asserting against the Debtor, Purchaser, and their respective successors and assigns, any default or unpaid obligation allegedly arising or occurring before the Closing, any pecuniary loss resulting from such default, or any other obligation under the Assigned Seller Contracts arising or incurred prior to the Closing, other than, as against the Debtor, Cure Costs.

25. Any party having the right to consent to the assumption and assignment of a Potentially Assigned Seller Contract that failed to object to such assumption and assignment is deemed to have consented to such assumption and assignment as required by section 365(c) of the Bankruptcy Code. If any Potentially Assumed Seller Contract is designated as a Assumed Seller Contract, then Purchaser shall enjoy all of the rights and benefits under such Assigned Seller Contract as of the applicable date of assumption and assignment without the necessity of obtaining such non-debtor party's written consent to the assumption or assignment thereof.

26. Upon assignment, Purchaser, its successors and assigns shall have the express right to exercise any and all unexercised extension options, renewal options, and/or non-disturbance rights or protections, notwithstanding any language in the Assigned Seller Contracts

making the exercise of such rights personal to any party or limiting the exercise of such rights only to an assignee who is an affiliate of the original named party under such Assigned Seller Contract or an entity that acquires all or substantially all of the assets of the original named party to such Assigned Seller Contract. Upon assignment, the Purchaser shall exercise said rights consistent with the terms of any such Assigned Seller Contract.

27.     Notwithstanding any other provision in the Sale Motion, this Sale Order, the Asset Purchase Agreement, Sale Documents, and any related agreements and instruments, including implementing sale documents, any licenses, authorizations, contracts, agreements, grants or other interests as between the Debtor and the federal government shall be treated, determined and administered in the ordinary course of business as if the debtor's bankruptcy case were never filed and the debtor and the Purchaser shall comply with all applicable non-bankruptcy law, federal regulations and statutes with respect to the transfer of any such item. Moreover, without limiting the foregoing, nothing in the Sale Motion, this Sale Order, the Asset Purchase Agreement, Sale Documents, and any related agreements or other instruments, shall be interpreted to set cure amounts or to require the government to novate or otherwise consent to the transfer of any federal government contract, agreement, license, grant or other interest. The government's rights to offset or recoup any amounts due under, or relating to, any contracts, agreements or other interests as set forth in this paragraph are expressly preserved.

28.     The consideration (including the Purchase Price and Assumed Liabilities) provided by Purchaser for the Purchased Assets under the Asset Purchase Agreement is fair and reasonable and the Sale may not be avoided under section 363(n) of the Bankruptcy Code.

29.     The Sale is undertaken by Purchaser in good faith, as that term is used in section 363(m) of the Bankruptcy Code and, accordingly, the reversal or modification on appeal of the authorization provided herein to consummate the Sale shall not affect the validity of the sale of the Purchased Assets to Purchaser (including with respect to the transfer of the Assigned Contacts assigned as part of the Sale of the Purchased Assets pursuant to section 365 of the Bankruptcy Code and this Sale Order), unless such authorization is duly stayed pending such

appeal. Purchaser is a good faith purchaser of the Purchased Assets and is entitled to all of the benefits and protections afforded by section 363(m) of the Bankruptcy Code (including with respect to the transfer of the Potentially Assigned Seller Contracts assigned as part of the Sale of the Purchased Assets pursuant to section 365 of the Bankruptcy Code and this Sale Order).

30.     The sale of the Purchased Assets outside of a plan of reorganization pursuant to the Asset Purchase Agreement neither impermissibly restructures the rights of the Debtor's creditors nor impermissibly dictates the terms of a liquidating plan of reorganization for the Debtor. The Sale does not constitute a *sub rosa* Chapter 11 plan.

31.     This Court shall retain exclusive jurisdiction to interpret and enforce the provisions of the Asset Purchase Agreement, the Bidding Procedures Order, and this Sale Order and to hear and resolve any controversy or claim arising out of or related to this Sale Order, the Asset Purchase Agreement or any related agreements, including without limitation: (a) any actual or alleged breach or violation of this Sale Order, the Asset Purchase Agreement, the Sale Documents, or any related agreements, (b) the enforcement of any injunctive provision or relief granted in this Sale Order or otherwise, as set forth in the Asset Purchase Agreement, and (c) disputes between the Debtor and/or Purchaser, as the case may be, and any non-debtors party to, among other things, any Potentially Assigned Seller Contracts or the Assigned Seller Contracts.

32.     All persons and entities that are presently, or on Closing may be, in possession of some or all of the Purchased Assets are hereby directed to surrender possession of the Purchased Assets to Purchaser as of the Closing.

33.     From and after the date of the entry of this Sale Order, the Debtor or any creditor or other party in interest shall not take or cause to be taken any action that would interfere with the transfer of the Purchased Assets to Purchaser in accordance with the terms of this Sale Order.

34.     This Sale Order is and shall be binding upon and shall govern acts of all entities including, without limitation, all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of fees, registrars of deeds, administrative agencies, governmental departments, secretaries of state, federal, state, and local officials, and all other

persons and entities, who may be required by operation of law, the duties of their office, or contract, to accept, file, register or otherwise record or release any documents or instruments that reflect that Purchaser is the assignee of the Purchased Assets free and clear of Liens, Claims or Interests (other than Permitted Liens), or who may be required to report or insure any title or state of title in or to any of the Purchased Assets conveyed to Purchaser (all such entities being referred to as "Recording Officers"). All Recording Officers are authorized and specifically directed to strike recorded Liens, Claims or Interests (except Permitted Liens) against the Purchased Assets recorded prior to the date of this Sale Order.

35.    With respect to the transactions consummated pursuant to this Sale Order, this Sale Order shall be sole and sufficient evidence of the transfer of title to Purchaser, and the Sale consummated pursuant to this Sale Order shall be binding upon and shall govern the acts of all persons and entities who may be required by operation of law, the duties of their office, or contract, to accept, file, register or otherwise record or release any documents or instruments, or who may be required to report or insure any title or state of title in or to any of the property sold pursuant to this Sale Order, including without limitation, all Recording Officers, and each of such persons and entities is hereby directed to accept this Sale Order as sole and sufficient evidence of such transfer of title and shall rely upon this Sale Order in consummating the transactions contemplated hereby.

36.    No bulk sales law or any similar law of any state or other jurisdiction shall apply in any way to the Sale authorized herein and in the Asset Purchase Agreement.

37.    The terms and provisions of the Asset Purchase Agreement, the Sale Documents and other the ancillary agreements, and this Sale Order shall be binding in all respects upon, and shall inure to the benefit of, the Debtor, Purchaser, and their respective affiliates, successors and assigns, and any affected third parties, notwithstanding any subsequent appointment of any trustee(s) under any chapter of the Bankruptcy Code or conversion of this case to a case under chapter 7, as to which trustee(s) such terms and provisions likewise shall be binding. The Asset Purchase Agreement, the Sale, the Sale Documents, and this Sale Order shall be binding upon, and

shall not be subject to rejection or avoidance by, any Chapter 7 or Chapter 11 Trustee appointed in the this chapter 11 case. Further, nothing contained in any plan of reorganization (or liquidation) confirmed in this Chapter 11 case or any order confirming any plan of reorganization (or liquidation) or any other order entered in these cases, including an order converting the Debtor's case from chapter 11 to a case under chapter 7 or dismissing the Debtor's chapter 11 case, shall conflict with or derogate from the provisions of the Asset Purchase Agreement, the Sale Documents, or the terms of this Sale Order. The provisions of this Sale Order and any actions taken pursuant hereto shall survive the entry of any order which may be entered confirming any chapter 11 plan of the Debtor, converting the Debtor's cases from chapter 11 to cases under chapter 7 of the Bankruptcy Code, or dismissing the Debtor's chapter 11 case.

38.　From and after the date hereof, the Debtor shall act in accordance with the terms of the Asset Purchase Agreement, and the Debtor, to the extent it already has not done so, shall execute any Sale Document at or prior to Closing. This Sale Order shall inure to the benefit of Purchaser, the Debtor, and their respective successors and assigns, including but not limited to any chapter 11 or chapter 7 trustee that may be appointed in the Debtor's case and shall be binding upon any trustee, party, entity or fiduciary that may be appointed in connection with these cases or any other or further case involving the Debtor, whether under chapter 7 or chapter 11 of the Bankruptcy Code.

39.　The Asset Purchase Agreement, the Sale Documents, and any related agreements, documents, or other instruments may be amended by the parties in a writing signed by such parties without further order of the Court, provided that: (i) any such amendment does not have a material adverse effect on the Debtor or Debtor's estate and (ii) notice of any such amendment shall be provided to the Committee.

40.　The failure to include specifically any particular provision of the Asset Purchase Agreement in this Sale Order shall not diminish or impair the effectiveness of such provisions, it being the intent of the Court that the Asset Purchase Agreement be authorized and approved in its entirety.

41. To the extent of any inconsistency between the provisions of this Sale Order, the Asset Purchase Agreement, and any Sale Documents or other documents executed in connection therewith, the provisions contained in the Sale Order, the Asset Purchase Agreement and any Sale Documents or other documents executed in connection therewith shall govern, in that order.

42. The provisions of this Sale Order are nonseverable and mutually dependent.

43. To the extent permitted by the Asset Purchase Agreement, the Debtor shall file updated Schedules to the Asset Purchase Agreement as soon as practicable following the Closing Date.

44. The provisions of this Sale Order authorizing the sale and assignment of the Purchased Assets free and clear of all Liens, Claims or Interests (other than Permitted Liens) against such assets shall be self-executing, and notwithstanding the failure of the Debtor, Purchaser, or any other party to execute, file or obtain releases, termination statements, assignments, consents or other instruments to effectuate, consummate and/or implement the provisions hereof, all Liens, Claims or Interests (other than Permitted Liens) on or against such Purchased Assets, if any, shall be deemed released, discharged and terminated.

45. Any claim under the Asset Purchase Agreement against the Debtor not satisfied shall constitute an allowed administrative claim under section 503(b) and 507(a)(1) of the Bankruptcy Code and shall be treated with such priority if the above-captioned bankruptcy cases convert to cases under chapter 7 of the Bankruptcy Code; provided however, if any such claim is not known by Purchaser as of the time of confirmation of any chapter 11 plan for the Debtor, such claim shall not be discharged pursuant to the confirmation of any such chapter 11 plan but instead shall continue as a liability of the reorganized or successor entity, subject in all respects to the time limitations on any such claim set forth in the Asset Purchase Agreement.

46. Because time is of the essence, this Sale Order shall be effective and enforceable immediately upon entry and its provisions shall be self-executing, and the stay of (i) orders authorizing the sale, use, or lease of property of the estate, as set forth in Bankruptcy Rule 6004(h), (ii) orders authorizing the assignment of an executory contract or unexpired lease, as set

forth in Bankruptcy Rule 6006(d), and (iii) proceedings to enforce a judgment, as set forth in Bankruptcy Rule 7062, or otherwise shall not apply to this Sale Order.

47.     The Debtor is authorized to close the Sale immediately upon entry of this Sale Order.

Dated: January 14, 2009
       Wilmington, Delaware

THE HONORABLE PETER J. WALSH
UNITED STATES BANKRUPTCY JUDGE